UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL A. MORGAN, 05-B-1137,

            Petitioner,

        -v-                                    08-CV-0650(MAT)
                                               **ORDER**
DAVID ROCK, Superintendent,
Great Meadow Correctional Facility,

            Respondent.
_____

## I.   Introduction

*Pro se* petitioner Michael A. Morgan ("petitioner") filed a
timely petition for writ of habeas corpus pursuant to 28 U.S.C.
§ 2254 challenging his conviction in Erie County Supreme Court of
Murder in the Second Degree (N.Y. Penal L. § 125.25(1)) following
a jury trial before Justice Penny M. Wolfgang. Petitioner is
currently serving a term of imprisonment of twenty-five years to
life.

## II.  Factual Background and Procedural History

Petitioner's conviction stems from the murder of his former
girlfriend ("the victim"), who was last seen alive on the evening
of October 3, 2004.  Three weeks later, police found her decomposed
and mutilated body in the home that she shared with petitioner and
her two daughters on Herkimer Street in the City of Buffalo. Both
of the victim's legs had been amputated below the knee. Her right
leg was frozen and showed no signs of decomposition, and her left
leg had been "cooked" and contained burns in the muscle. The

remainder of victim's body, which had been found in an armchair, revealed an eight-inch by six-inch cut in the abdomen, made by a sharp instrument. The victim's official cause of death, however, was strangulation. T. 418-427, 583-586, 652-659.[1]

Petitioner, a diagnosed paranoid schizophrenic, admitted mutilating the victim's body, but denied that he was responsible for her death. The defense theorized that the victim either committed suicide, or, alternatively, that petitioner suddenly "snapped" and killed the victim unintentionally. T. 3, 717, 725. The jury found petitioner guilty on the sole count of intentional murder, and he was subsequently sentenced to a term of imprisonment of twenty-five years to life. T. 801, S. 7.

Through counsel, petitioner filed a direct appeal and *pro se* supplemental brief in the Appellate Division, Fourth Department, which unanimously affirmed the judgment of conviction. People v. Morgan, 38 A.D.3d 1329 (4th Dept.), lv. denied, 8 N.Y.3d 988 (2007).

Petitioner then filed the instant petition for habeas corpus and supporting memorandum of law (Dkt. ## 1, 12), alleging the following seven grounds for relief: (1) the trial court erred in admitting prejudicial photographs of the victim and the crime scene; (2) the trial court erred in admitting evidence of uncharged crimes; (3) the conviction was based on legally insufficient

---

[1] Citations to "T.__" refer to the trial transcript; citations to "S.__" refer to the sentencing transcript.

evidence; (4) petitioner was denied due process because he was precluded from questioning prospective jurors; (5) petitioner's statements to police were admitted in violation of <u>Miranda v. Arizona</u> and his right to counsel; (6) ineffective assistance of trial counsel; and (7) the sentence is harsh and excessive. Petition ("Pet.") ¶ 22(A)-(D), Attach. Grounds 5-7.

The respondent has submitted a response and memorandum of law opposing the petition (Dkt. ## 8, 9). For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U .S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by

[the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.   Merits of the Petition**

   **1.   Improperly Admitted Photographs**

Petitioner first contends that he was denied due process when the trial court admitted photographs of the crime scene that were "offered only to inflame the jury." Pet. ¶ 22(A). The Appellate Division held, "[p]hotographic evidence should be excluded 'only if its sole purpose is to arouse the emotions of the jury and to prejudice the defendant,' and here, the photographs were relevant with respect to the efforts of defendant to dispose of the victim's body and the issue of his intent." Morgan, 38 A.D.3d at 1330 (quoting People v. Pobliner, 32 N.Y.2d 356, 370 (1973)).

Prior to the commencement of trial, the prosecutor marked forty photographs for identification, to which defense counsel objected to nine as "highly inflammatory and not probative of any of the remaining issues at trial." T. 374. The photographs included images of the victim's body parts and a freezer bag containing flesh. T. 374-376. In support of the admission of the photographs, the prosecutor argued that they were probative of the condition of the crime scene, the recovery of evidence, and demonstrated an intentional act. T. 377. In an exercise of discretion, the trial court agreed that certain photographs were inadmissible and deemed the remaining photos to be admissible at trial. T. 379-380.

Generally an evidentiary ruling is not a matter of federal constitutional law; an erroneous evidentiary ruling can, however, rise to the level of a constitutional claim cognizable on a habeas corpus petition if it is shown that the error so infected the proceedings as to have denied the petitioner a trial affording due process of law by rendering it fundamentally unfair. Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (holding that in order to establish denial of fair trial from erroneous admission of evidence, it must be shown that the erroneously admitted evidence, viewed objectively in light of entire record before jury, was sufficiently material to provide basis for conviction or to remove reasonable doubt that would have existed on record without it); Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.), cert. denied, 464

U.S. 1000, (1983); <u>Roberts v. Scully</u>, 875 F.Supp. 182, 188-89 (S.D.N.Y.), <u>aff'd</u>, 71 F.3d 406 (2d Cir.1995).

Under longstanding New York law, it is matter of the trial court's discretion as to whether to introduce photographs of homicide victims. <u>See</u> <u>People v. Wood</u>, 79 N.Y.2d 958 (1992). ("The general rule is ... [that] photographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered.' They should be excluded 'only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant[.]' ") (quoting <u>People v. Pobliner</u>, 32 N.Y.2d 356, 369-70 (1973)).

In the instant case, the central issue was the intent of the petitioner. The defense conceded that petitioner had dismembered the body, but was either not responsible for the victim's murder or did not kill the victim intentionally. The prosecution's theory, on the other hand, was that petitioner intentionally strangled the victim while she slept in an armchair. After killing her, petitioner, who weighed over one hundred pounds less than the victim, was unable to move her body. According to the prosecution, the petitioner then cut up the body and attempted to dispose of it to conceal the crime. Thus, the prosecution sought to show the deliberateness of petitioner's actions in dismembering the victim's body to prove that he was the murderer, because only the

perpetrator would have felt the need to mutilate the body and dispose of it. The Appellate Division agreed with this reasoning, finding that the photographs were relevant to the issue of petitioner's intent. Morgan, 38 A.D.3d at 1330.

Based on a review of the record, petitioner has failed to demonstrate an error of state evidentiary law. Even if there were such an error, petitioner was not prejudiced in the constitutional sense by the photographs' introduction into evidence because the photographs were not the basis for petitioner's conviction. There was abundant evidence presented by the prosecution to convict petitioner of second-degree murder, see infra at III.B.3., and thus even if the photographs had been excluded, there is no reasonable probability that the jury would have reached a more favorable verdict. See Collins, 755 F.2d at 19; Taylor, 708 F.2d at 891.

The appellate court's determination was therefore not an unreasonable application of, or contrary to Supreme Court precedent, and habeas relief must be denied on this ground.

### 2.  Improperly Admitted Evidence of an Uncharged Crime

As he did on direct appeal, petitioner argues that he was denied a fair trial because the admission of evidence of his mutilation of the victim's body was not relevant to the crime charged. Pet. ¶ 22(B).  The Appellate Division concluded, "the court did not err in admitting evidence that defendant committed

uncharged acts of postmortem mutilation. The probative value of
that evidence with respect to the crime charged outweighed its
prejudicial effect." <u>Morgan</u>, 38 A.D.3d at 1330 (citation omitted).

Shortly before jury selection, defense counsel made a motion
*in limine* to preclude evidence of petitioner's postmortem acts to
the victim's body, on the basis that the evidence was inflammatory
and irrelevant, as petitioner had not been charged in the
indictment with the dismemberment. T. 3-7. Counsel argued that if
the jury heard that petitioner "chopped up the body" then the
jurors would assume that petitioner was the killer or,
alternatively, that the petitioner was "so crazy" that they
wouldn't "want him on the streets" and would likely convict him of
murder anyway. T. 6. The prosecutor rebutted that the evidence was
relevant because the jury would need to determine who killed the
victim, how she was killed, and if the person intended to kill her.
T. 7. He further argued that if a third person killed the victim,
there would have been no need for petitioner to dispose of the
body. T. 8. The trial court ultimately ruled that the evidence was
"relevant and permissible." T. 16.

The respondent has correctly observed that a claim of
improperly admitted evidence in violation of <u>People v. Molineux</u>,
168 N.Y. 264 (1901)[2] is a state law issue. <u>See</u> <u>Roldan v. Artuz</u>, 78

---

[2] <u>People v. Molineux</u>, 168 N.Y. 264 (1901) (prosecution may present
evidence of a defendant's prior uncharged criminal or immoral acts for limited
purposes, including to prove motive, identity, and intent).

F.Supp.2d 260, 277-278 (S.D.N.Y. 2000). As stated above, erroneous evidentiary rulings "do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial." Taylor v. Curry, 708 F.2d at 891. Moreover, "[w]here the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.), cert. denied, 525 U.S. 840 (1998) (quoting Estelle v. McGuire, 502 U.S. 62, 69, (1991)).

Under New York law, evidence that a defendant committed similar uncharged crimes is generally excluded "because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his past." People v. Alvino, 71 N.Y.2d 233, 241-42 (1987). The trial court may admit such evidence, however, "if it helps to establish some element of the crime under consideration or is relevant because of some recognized exception to the general rule." Id. ("[E]vidence of uncharged crimes may be relevant to show (1) intent, (2) motive, (3) knowledge, (4) common scheme or plan, or (5) identity of the defendant. The list, of course, is not exhaustive."). The evidence will be allowed so long as its probative value outweighs the potential for prejudice to the

defendant. Id. at 242; see also United States v. Sappe, 898 F.2d 878, 880 (2d Cir. 1990).

Here, the prosecution sought to introduce the photographs and testimony surrounding the mutilation to prove the identity of the killer and his intent to murder the victim. Because the evidence was probative of at least one material issue before the court, it was relevant for a purpose other than to show petitioner's criminal disposition. There was thus no error under state law, and petitioner has consequently not shown a constitutional error resulting in actual prejudice. See Brooks v. Artuz, No. 97 CIV. 3300(JGK), 2000 WL 1532918, *8 (S.D.N.Y. Oct. 17, 2000) (denying habeas relief where petitioner failed to establish that the admission of this testimony about uncharged criminal conduct constituted a violation of a constitutional right).

This claim is therefore dismissed.

### 3. Sufficiency of the Evidence

Petitioner next avers that the evidence presented at trial is legally insufficient to support his conviction for second-degree murder. Pet. ¶ 22(C). The state appellate court rejected petitioner's contention on the merits. Morgan, 38 A.D.3d at 1329.

A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama v. Commissioner of Correctional Services, 235 F.3d 804, 813 (2d Cir. 2000). Habeas corpus relief must be denied if,

"after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original). This sufficiency-of-evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993). Stated another way, the reviewing court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt ... view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor." <u>United States v. Carson</u>, 702 F.2d 351, 361 (2d Cir. 1983) (internal citations omitted), <u>cert. denied sub nom.</u> <u>Mont v. United States</u>, 462 U.S. 1108 (1983).

A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir. 1999) (citation omitted), <u>cert. denied</u>, 528 U.S. 1170 (2000). The New York Penal Law reads, "[a] person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal L. § 125.25(1).

At petitioner's trial, the prosecution presented evidence that the victim had been strangled, and that petitioner concealed her death at the house that he shared with her and attempted to dispose of her body parts by freezing and/or cooking them, and flushing them down the toilet. T. 560-566, 583-586, 637, 657-658. It was also established at trial that petitioner and the victim had a relationship marred by domestic violence. T. 485-488, 509, 536-537. Following the victim's disappearance, petitioner told conflicting accounts as to her whereabouts to various friends and family members. T. 424-431, 497-506, 570-574. Petitioner refused to allow police into the Herkimer Street residence when attempts were made to locate the missing victim. T. 462-468. Petitioner's sister, who lived next door on Herkimer, testified that when she visited her brother, she was not allowed to go into his bedroom or the attic, and to "keep out of" petitioner's freezer.[3] T. 472-475. Finally, while incarcerated at the Erie County Holding Center, petitioner admitted to another inmate that he killed the victim, and that the victim had been "very abusive" toward petitioner prior to the murder. T. 537, 541.

---

[3] Hector Serrano ("Serrano"), an employee of Aaron Sales and Lease Rentals, went to the petitioner's home on October 23, 2004 to repossess a freezer that the victim had rented. Petitioner was at home and the freezer, which was locked, was outside on the covered porch. Petitioner appeared "nervous and jumpy" and repeatedly asked Serrano for a receipt. After Serrano returned the freezer to the store, he assigned Shannon Rose ("Rose") to clean it. Rose noticed that it had a "real funky smell" to it that he was not able to remove after cleaning it several times. Rose also observed yellow and red substances in it. T. 558-566.

On the present record, there was clearly sufficient evidence for a rational trier of fact to find the elements of Murder in the Second Degree. The state court's rejection of petitioner's legal insufficiency claim, therefore, was neither contrary to nor an unreasonable application of <u>Jackson v. Virginia</u>. Habeas relief on this ground is therefore denied.

### 4. Due Process Violation

Petitioner contends that he was denied due process because the trial court precluded him from questioning prospective jurors regarding the reliability of informant testimony. Pet. ¶ 22(D). The Appellate Division held that the trial court "did not abuse its broad discretion to control and restrict the scope of voir dire examination when it precluded questioning of sworn jurors following the disclosure that a jailhouse informant would testify at trial." <u>Morgan</u>, 38 A.D.3d at 1330.

On the second day of jury selection, at which time ten jurors had been selected, the prosecutor informed the trial court that the police had provided him a report indicating that an Erie County Holding Center was interviewed to whom petitioner made admissions. T. 183-184. He explained that he was not made aware of the report until that morning. T. 187. Finally, the prosecutor noted that he had not spoken with the informant, no "deal" had been made with the informant, and he had not yet decided if he intended to call the informant as a witness. <u>Id.</u> The trial court then precluded both

parties from making any reference to the informant during *voir dire* and to complete jury selection due to the "myriad possibilities" that could arise. T. 188. Although defense counsel argued that he felt he should address the issue of informant testimony with the jury, the trial court assured him that if the informant would testify and counsel did not have the opportunity to address it with the jury, that it would not "rul[e] out" a mistrial motion. T. 189.

Defense counsel moved for a mistrial on the basis that he was not able to properly question the jury panel or strategize the defense appropriately. T. 262-263. The following day, the trial court denied his motion, concluding that it would address the sworn jurors directly, and both sides would be able to submit specific questions on the issue of informant testimony. T. 266. Subsequently, defense counsel questioned the remaining panel, after which the final five jurors were selected. T. 313.

It is well-settled that criminal defendant in a state court is guaranteed an "impartial jury" by the Sixth Amendment as applicable to the States through the Fourteenth Amendment. See Duncan v. Louisiana, 391 U.S. 145 (1968). In reviewing a state trial court's *voir dire*, however, the Supreme Court has instructed that a federal court's role is "limited to enforcing the commands of the United States Constitution." Mu'Min v. Virginia, 500 U.S. 415, 422 (1991). The Constitution does not afford a criminal defendant a broad right to have questions asked during *voir dire* that "specifically address

matters that conceivably might prejudice veniremen against him."
Ristaino v. Ross, 424 U.S. 589 (1976) (quoting Ham v. South
Carolina, 409 U.S. 524 (1973)). The questioning of prospective
jurors during *voir dire* is "conducted under the supervision of the
trial court . . . 'and a great deal must, of necessity, be left to
its sound discretion.'" Mitchell v. Herbert, 1998 WL 186766, *2
(S.D.N.Y.) (quoting Mu'Min, 500 U.S. at 422); Connors v. United
States, 158 U.S. 408, 413 (1895).

Here, the record reveals that the trial court did not abuse
its discretion. When the court initially precluded questioning, it
did so because the prosecutor had not decided if he intended to
call the informant as a witness. When the court was notified that
the informant was indeed going to be called as a witness, it
offered the parties the opportunity to directly question
prospective jurors on that issue, as well as allowing the parties
to submit questions that would be directed to the sworn jurors.
Defense counsel took advantage of the opportunity to question the
second panel, and during the trial cross-examined the informant
extensively, questioning his credibility. T. 542-550. Finally, the
court gave jury instructions on how to evaluate informant
testimony. Thus, the court's initial decision to preclude
questioning of the sworn jurors on the issue of informant testimony
was not in violation of petitioner's due process rights. See, e.g.,
Manning v. Fisher, 2006 WL 3408575, *5 (S.D.N.Y. 2006) ("In sum,

while petitioner has a constitutional right to an impartial jury and is entitled to due process, there has been no showing whatsoever that the court's decision to refrain from questioning other veniremen about [a prospective juror's] dismissal violated petitioner's Fourteenth and Sixth Amendment rights or that the Appellate Division's decision is not entitled to deference.")

Accordingly, the Appellate Division's determination was not an unreasonable application of, or contrary to clearly established federal law, and this claim is denied.

### 5. Fifth Amendment Violation

Petitioner next contends that his "incriminating statements should have been suppressed because they were taken while he was in custody but before being properly advised of his rights," in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Pet., Attach., Ground Five. As with all of petitioner's contentions raised in his *pro se* brief on appeal, the appellate court denied this claim on the merits. <u>Morgan</u>, 38 A.D.3d at 1330.

In the instant case, a suppression hearing was held on January 26, 2004, in which petitioner sought to suppress his statements made to the Buffalo Police Officer Thomas F. Secru, Jr. ("Secru"). On October 25, 2003, Secru was responding to a fight at 215 Breckenridge Street at approximately 12:05p.m. Hr'g Mins. dated 1/26/2004 at 3. When the officer arrived at the scene, he observed a large man restraining a small man, who would later be identified

as petitioner, and three other people standing nearby. Id. The larger man told Secru that petitioner ran when he was asked about a missing relative (the victim). Secru was also informed that petitioner had an outstanding warrant. The officer proceeded to separate petitioner from the others and asked for his name, address, and birthday. Secru then broadcasted that information over his police radio and determined that petitioner did have a petit larceny warrant. Id. at 4-5.

Petitioner was handcuffed and put in Secru's patrol car. During that time, the group of individuals present at the fight identified themselves as family members of the victim, who had been missing. They showed Secru missing person fliers with her picture and explained that she had not been seen for 10 days, and that they had tried to enter the home that she shared with petitioner. Id. at 6. They told the officer that petitioner had told them first that the victim was ill and that they could not see her, and then told them that she was in a hospital. The family members checked area hospitals, however, and were unable to locate her. Id. at 6.

Secru asked petitioner if he had any identification, to which petitioner responded that he did not. Secru suggested that they go into petitioner's home so that he could retrieve it, to which petitioner replied, "I'm not going to let you inside my house." Id. at 6-8. Secru then called his lieutenant and waited with petitioner for his arrival. Meanwhile, the victim's relatives remained

outside, wanting to go inside the house and appearing "very upset".
While they were waiting, Secru asked petitioner when he had last
seen the victim. Id. at 9. Petitioner responded that he saw her the
previous Friday morning when she was sick and had a doctor's
appointment. Id. at 10.  Secru then asked petitioner if he could go
inside the house to see if the victim was there. Petitioner told
Secru that he could not enter the house, and that he would not give
Secru permission to do so. Id. at 10. Finally, Secru asked
petitioner for the name of the doctor that the victim went to the
week before, and petitioner replied, "I have nothing else to say.
I want to talk to a lawyer." Id. at 11. Secru told petitioner that
he did not need a lawyer, that he was being arrested based on a
warrant, and that he was simply trying to find out where the victim
was. Id. at 11. Secru testified that he did not threaten
petitioner. Id. at 12.

In Miranda v. Arizona, the Supreme Court held the prosecution
may not use a defendant's statements that are the product of
"custodial interrogation" unless it demonstrates the defendant was
first warned of his Fifth Amendment privilege against
self-incrimination and then voluntarily waived those rights. 384
U.S. at 444. "At its core, Miranda seeks to deal with those
situations in which a ... suspect[ ] ... might feel compelled by
police to incriminate himself." United States v. Newton, 181
F.Supp.2d 157, 168 (S.D.N.Y. 2002) (citing Miranda, 384 U.S. at

444). A suspect placed in a coercive environment, i.e., "custodial interrogation", is subject to "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Miranda, 384 U.S. at 467.

The Supreme Court has carved out a narrow Miranda exception when arresting officers ask a defendant "questions necessary to secure their own safety or the safety of the public." New York v. Quarles, 467 U.S. 649, 659 (1984); see also United States v. Newton, 369 F.3d 659, 678 (2d Cir. 2004). The exception permits pre- Miranda inquiries of defendants that are "reasonably prompted by a concern" for public safety and are to be "circumscribed by the exigency which justifies it." Quarles, 467 U.S. at 656.

The New York Court of Appeals has recognized a related exception to the Miranda rule in People v. Krom, 61 N.Y.2d 187 (1984), which held that a defendant's state constitutional rights were not violated where police questioned a suspect concerning the whereabouts of a kidnapping victim after he had been arrested and had asserted his right to counsel:

> When the police are searching for a person who has recently disappeared, the need to provide prompt assistance is not terminated once the police learn that the person has been abducted. Even if the suspected kidnapper has been arrested the police emergency role may continue as long as the victim's whereabouts remains unknown. It would not be reasonable or realistic to expect the police to refrain from pursuing the most obvious, and perhaps the

> only source of information by questioning the
> kidnapper, simply because the kidnapper
> asserted the right to counsel after being
> taken into custody.

61 N.Y.2d at 199-200.

The suppression court recognized that the exception in <u>Quarles</u> is "almost always based upon the immediate necessity to locate accomplices to violent crimes or weapons," and thus relied on the holding in <u>Krom</u> to determine that the statements were admissible. <u>See</u> Memorandum and Order of Supreme Court, Erie County, Ind. No. 03-4959 (Wolfgang, J.) dated June 7, 2004.

On the outset, the Court observes that the trial court's findings of fact are presumed to be correct. 28 U.S.C. § 2254(e)(1). The Appellate Division, in summarily denying petitioner's Fifth Amendment challenge, agreed with the suppression court that <u>Miranda</u> warnings were not required because the question was posed to locate the missing victim, and not to elicit an incriminating response.

The Court is not aware of any federal law that is analogous to New York's <u>Krom</u> exception to the requirement that <u>Miranda</u> warnings be issued prior to custodial interrogation. Assuming, *arguendo*, that petitioner was subject to custodial interrogation, and assuming that the New York Court of Appeals decision in <u>Krom</u> is contrary to the clearly established federal law set forth in <u>Quarles</u>, which provides a narrow "public safety" exception to Miranda warnings, any error in admitting the statements is

harmless. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991)(partial deprivation of the right to counsel resulting in the admission of involuntary statements at trial is subject to harmless error analysis); Nova v. Bartlett, 211 F.3d 705, 709 (2d Cir. 2000)(admission of statement given in violation of Miranda harmless error where statement is cumulative of properly admitted evidence).

On federal habeas review of a state court criminal conviction, the applicable harmless-error standard is found in Brecht v. Abrahamson, 507 U.S. 619 (1993), Fry v. Pliler, 551 U.S. 112 (2007) (holding that in 28 U.S.C. § 2254 proceedings, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under Brecht's "substantial and injurious effect" standard, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in Chapman v. California, 386 U.S. 18, 24 (1967)). "The Supreme Court clarified in Brecht v. Abrahamson . . . that a habeas corpus petition should not be granted unless the violation of constitutional rights had 'substantial and injurious effect or influence in determining the jury's verdict.'" Mingo v. Artuz, 174 F.3d 73, 78 (2d Cir. 1999) (quoting Brecht, 507 U.S. at 637). In other words, a habeas petitioner must demonstrate that the constitutional error at his trial resulted in "actual prejudice."

<u>Brecht</u>, 507 U.S. at 637; <u>accord, e.g.</u>, <u>Dallio v. Spitzer</u>, 343 F.3d 553, 569 (2d Cir. 2003).

First, petitioner's statements to police did not contain an implicit admission that he murdered the victim. Moreover, his refusal to allow Officer Secru into the Herkimer Street residence mirrored statements petitioner made to the victim's relatives and to other witnesses.

Second, the evidence against petitioner was compelling. <u>See</u> <u>supra</u> III.B.3. Petitioner, who had allegedly been subject to physical abuse at the hands of his former girlfriend, admitted to dismembering the victim's body after her death. He actively concealed her death at the house that he shared with her, and attempted to dispose of her body parts by cooking them, freezing them, and flushing them down the toilet. While petitioner was incarcerated, he admitted that he killed the victim. After reviewing the record in its entirety, petitioner's un-<u>Mirandized</u> statements to police had no effect on the jury's verdict and petitioner was not prejudiced by its admission. Accordingly, this claim is denied.

### 6. Ineffective Assistance of Trial Counsel

Petitioner complains that his defense counsel was constitutionally ineffective for failing to pursue a psychiatric defense and failing to call expert witnesses at trial. Pet.,

Attach., Ground Six. This claim was rejected on the merits by the Appellate Division. Morgan, 38 A.D.3d at 1330.

The record indicates that on December 13, 2004, defense counsel filed a motion seeking to introduce psychiatric evidence concerning petitioner's mental state at the time he dismembered the victim's body. See Notice of Motion *In Limine* dated 12/13/2004. On the morning of jury selection, counsel informed the trial court that petitioner had been examined by two doctors as well as by the prosecution's psychiatrist. Each doctor determined that petitioner was a paranoid schizophrenic and suffered psychotic episodes due to lack of medication, but also that he was fit to proceed to trial and understood right from wrong. Based on that information, defense counsel decided not to move forward with a psychiatric defense, but would instead build the defense "based on the evidence as to whether or not [petitioner] is the perpetrator of the homicide." T. 2-3.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would

have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

Based on the proof against petitioner, and in the absence of a psychiatric defense, the strategies available to petitioner were limited. Counsel thus made the strategic decision not to request any lesser-included offenses or an extreme emotional disturbance charge in an attempt to undermine the prosecution's theory of intentional murder and secure petitioner an acquittal on the sole charge in the indictment. Petitioner contends that had defense counsel raised the affirmative defense of extreme emotional disturbance, the outcome of petitioner's trial would have been different. See Pet'r Mem. 36. "The ineffectiveness analysis, however, does not proceed from the 20-20 perspective of what might have occurred had a particular strategy been adopted." Remy v. Graham, 2007 WL 496442, *6 (E.D.N.Y. 2007) (citing Strickland, 466 U.S. at 689). It is clear that counsel thoroughly investigated a

psychiatric defense and made the strategic decision not to proceed, likely because it would not have been successful at trial. Under the terms of Strickland, actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. 466 U.S. at 689; see also, Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).

Because petitioner has failed to show that his attorney's conduct was unreasonable, there is no need to address whether petitioner was prejudiced due his attorney's allegedly deficient conduct. See Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) ("'[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.' " (alterations in original) (quoting Strickland, 466 U.S. at 697)).

Petitioner has not demonstrated the state court's rejection of his ineffective assistance of counsel claim ran afoul of Supreme Court precedent, and habeas relief is denied on this ground.

### 7.    Harsh and Excessive Sentence

Petitioner argues that his sentence of twenty-five years to life imprisonment  is unduly harsh and excessive. Pet., Attach., Ground Seven. In support of his argument, petitioner contends that his conviction should be reduced to a charge of manslaughter, and that the evidence did not support a conviction for second-degree

murder. As explained above, petitioner's legal insufficiency claim is without merit. See supra at III.B.3.

Moreover, a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.").  A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range.  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

Here, petitioner was sentenced within the permissible range provided by New York's sentencing statute. See N.Y. Penal L. § 70.00.  He has thus not presented a cognizable constitutional issue, and this claim is dismissed. See White, 969 F.2d at 1383.

## IV. Conclusion

For the reasons stated above, Michael Morgan's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and

the action is dismissed.  Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    September 16, 2010
          Rochester, New York